IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | Criminal No. 3:19-cr-110 |
| ) | |
| KENDRIC VANDRELL MCCRAY, ) | GOVERNMENT'S |
| ) | SENTENCING MEMORANDUM |
| Defendant. ) | |
| ) | |

The United States of America, by and through its undersigned counsel, respectfully submits the following Sentencing Memorandum:

## I. Background

Defendant Kendric McCray (McCray) was the perfect "fall guy" for Brad McCorkle, Isaac Bell, and Derik Martinez. By all accounts, McCray was a destitute drug user with a bad criminal record and a reputation for untrustworthiness. Records show McCray's name was used on the titles of 180 vehicles sold by 4th Avenue Auto Sales and 85 of those had their odometers tampered with, and turned back, before they were sold to unwitting buyers. It was clear to investigators early on that McCray did not have the ability to purchase, fix up, and sell cars. Nevertheless, this was the defense launched by McCray's co-defendants: that McCray bought "Mechanic's Specials" for almost nothing, fixed them up himself, and resold them. Because his name is on all of the paperwork, Brad McCorkle, Isaac Bell, and Derik Martinez thought they had "plausible deniability" with respect to the rolled back odometers. The problem is, and was, the deniability was not plausible when considering

1

McCray's lack of sophistication, resources, and capabilities. Numerous attempts by the Government to get to the truth were thwarted by claims that investigators were barking up the wrong tree as no one else besides McCray reported that they had knowledge of how this was done. The prosecution was asked to re-evaluate its case because of a claimed lack of evidence and the clear culpability of McCray. This criminal family is a tight family group, save Martinez, who, aside from a couple of missteps and not a family member, towed the family line.[1]

This defense might have worked, or at least resulted in a trial, except for two things. McCray came forward with the truth, and DOT Special Agent Kevin Porter (who McCorkle and Bell falsely accused of lying in a search warrant affidavit) found Tanin Electronics in Racine, Wisconsin. As the Court is now aware, when McCray entered a guilty plea to conspiracy to commit wire fraud, he set forth his involvement in fraud with 4th Avenue Auto Sales, Brad McCorkle, Isaac Bell, and others. It is clear, McCray posed as a "straw buyer" of at least 180 cars and he knew these were not "Mechanic's Specials." But, the Government could find no evidence that McCray knew odometers were removed from the cars, sent to Tanin Electronics to be altered, and then re-installed to vehicles sold to innocent purchasers by Martinez and others. Special Agent Porter discovered this and based upon McCray's guilty plea and the

---

[1] The first time, when Martinez was caught posing as McCray when selling cars, Martinez lied to the police about McCray being knowledgeable of the sales, but implicated Brad McCorkle and 4th Avenue Auto Sales. When he was arrested by the FBI, Martinez lied again feigning McCorkle's involvement and trying to implicate a deceased man, DeMarco Thornton, knowing full well it was McCorkle and 4th Avenue behind the scam.

records from Tanin, the defendants' protestations of innocence and Government mistake and incompetence, withered and died.

McCray was essential to the success of the conspiracy because his involvement shielded the owners and salesmen from criminal repercussions. It is clear that McCray is not a mechanic and did not have the tools or the knowledge to alter odometers.

But, McCray is not blameless. Part of what makes him a perfect fall guy is his well-deserved reputation as a criminal and his record for dishonesty and drug use. His arrests and convictions date back to 1989 and run all the way to 2019. McCray has numerous convictions for offenses against the police, property crimes, driving offenses including drunk driving offenses, drug offenses, assault, and domestic assault. He was arrested in this case on November 14, 2019 and was released on bond. While on bond he committed serious crimes in Illinois involving the breaking into the residence of a former partner and engaging in violence. This resulted in his arrest and incarceration in Illinois and required a federal writ to bring him here from Illinois DOC in July of 2020. To his credit, about six weeks later, McCray entered a plea agreement and a guilty plea.

## II. Presentence Report-Guideline Calculations

The parties agree concerning the amount of loss, the number of victims, and acceptance of responsibility. The loss of less than $250,000 establishes a Base Offense Level of 7 plus 10 from the table. Only two levels are added because of the

number of victims is 10 or more. Three levels are subtracted from the total to reach a Total Offense Level of 16. The undisputed Criminal History Category is VI establishing an advisory guideline range of 46 to 57 months.

### III. Disputed Guideline

#### A. Defendant objects because there is no reduction for an alleged minimal role in the offense

McCray argues that he should receive a four-level reduction for playing a minimal role in the offense. McCray suggests that his guideline range should be 27-33 months. The Government disagrees. The Government does not expect to call any witnesses on this point.

This is a matter for the Court to determine at sentencing. But, it is the defendant's burden, not the Government's, to establish that a mitigating role reduction is warranted. *United States v. Gayekpar*, 678 F.3d 629, 639 (8th Cir. 2012); *United States v. Pruneda,* 518 F.3d 597, 606 (8th Cir. 2008). Guideline section 3B1.2 comment n. 3(C) states the determination is based on the totality of the circumstances "heavily dependent upon the facts of the particular case." The commentary outlines several relevant but "non-exhaustive" factors to be considered including: (i) the degree to which the defendant understood the scope and structure of the criminal activity; (ii) the degree to which the defendant participated in planning or organizing the criminal activity; (iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority; (iv) the nature and extent of the defendant's participation in the commission of the criminal

activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts; and (v) the degree to which the defendant stood to benefit from the criminal activity. U.S.S.G. § 3B1.2 comment n. 3(C). It also states: "The fact that a defendant performs an essential or indispensable role in the criminal activity is not determinative. Such a defendant may receive an adjustment under this guideline if he or she is substantially less culpable than the average participant in the criminal activity." *Id*. The minimal participant role is "intended to cover defendants who are *plainly* among the least culpable of those involved in the conduct of a group. U.S.S.G. § 3B1.2 comment n. 5. Even a defendant who is decidedly less culpable than his co-defendants, however, is not entitled to a mitigating role reduction if he is deeply involved in the criminal acts. *Id*. citing *United States v. Alverez,* 235 F.3d 1086, 1090 (8th Cir. 2000).

  Here, the evidence supports a finding that McCray is not entitled to a minimal-participant reduction, because he was: (1) an integral part of the scheme over a long period of time, (2) deeply involved in it and available whenever needed, (3) and had substantial knowledge of the identity and role of the key participants. The McCorkles, Isaac Bell, Nick McFarlin, and Martinez are not the only other participants in this conspiracy. There were 13 other straw buyers besides McCray including friends of McFarlin and Keithen McCorkle who "straw-purchased" cars, sometimes only one or two. Not all 13 of them understood the fraudulent nature of the scheme. Some thought they were doing favors for the fraud perpetrators. But,

McCray is on the titles for 180 cars purchased over a four to five year period. And, unlike most of the others, McCray was paid cash for each car titled in his name.

McCray received the paperwork for the vehicles then walked into the Scott County Treasurer's office repeatedly claiming to the clerks that he was the true owner of dozens of vehicles he purchased as "Mechanic's Specials" knowing full well this was lying and he was cheating. He executed and presented false documents, one after another, creating false state and local records and concealing the connection between the unwitting buyers and 4th Avenue Auto Sales. Although McCray was not "in on" the odometer tampering part of the scheme, he well knew the profit motive 4th Avenue had for committing this fraud.

Under these circumstances a minimal role is not appropriate.[2]

## IV. Government's Recommendation

Title 18, United States Code, Section 3553(a) mandates a sentence that is sufficient to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense; it must afford adequate deterrence to criminal conduct; protect the public from further crimes of the defendant; and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. In addition, the Court is to

---

[2] The Court and defendant are directed to the fact that the Government agreed to a minor-participant role for co-defendant Derik Martinez. (Dkt. 251, ¶ 12(d))   It is arguable that Martinez is less culpable than McCray. It is impossible, without the remaining defendants' assistance and intensive investigation, to determine the number of cars Martinez sold for 4th Avenue Auto Sales though it is certainly dozens and certainly not as many as 180.

6

consider "the nature and circumstances of the offense and the history and characteristics of the defendant" and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(1), (a)(6).

This a fraud case involving more than 150 victims. The guidelines suggest there may be cases in which the offense level substantially understates the seriousness of the offense. Here, the number of victims is substantially higher than the 10 victims it takes to add just two levels to the overall offense level. The criminal conduct overall began as early as 2013 and continued for years. McCray was involved for a large part of that time and his involvement affected at least 85 car buyers. That makes this an important, if not a "serious," case.

In summary, the defendant's criminal history, his deep involvement in the fraud, and the length of time he was part of it, all suggest a sentence within and at or near the top of the advisory guideline range. Such a sentence is needed to promote respect for the law and to provide just punishment, afford adequate deterrence to criminal conduct, and to protect the public from further crimes.

        Respectfully Submitted,

        Richard D. Westphal
        Acting United States Attorney

By:   /s/ *Clifford R. Cronk III*
        Clifford R. Cronk III
        Assistant United States Attorney
        United States Court House
        131 East 4th Street, Suite 310
        Davenport, IA   61201
        Tel: (563) 449-5432
        Email: cliff.cronk@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on May 20, 2021, I electronically filed the foregoing with the Clerk of Court using the CM ECF system.   I hereby certify that a copy of this document was served on the parties and stand-by or attorney of record by: ECF/ Electronic filing and email.

UNITED STATES ATTORNEY

By: /s/ *Clifford R. Cronk III*
    Clifford R. Cronk III
    Assistant U. S. Attorney