IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| United States of America, ) | |
| ) | |
| *Plaintiff*, ) | Criminal No. 3:19-cr-110 |
| ) | |
| vs. ) | |
| ) | |
| Kendric Vandrell McCray, ) | |
| ) | |
| *Defendant*. ) | |

**Defendant's Sentencing Memorandum**

Defendant, KENDRIC VANDRELL MCCRAY, through undersigned counsel, respectfully requests, pursuant to 18 U.S.C. § 3553(a) and *United States v. Booker*, 543 U.S. 220 (2005), and its progeny, that this Honorable Court impose a sentence below or near the lower end of the guideline range, followed by a term of supervised release. In support of this request, McCray states as follows:

**1. Procedural history.**

The Government charged Kendric McCray with conspiracy to commit wire fraud (Count 1), wire fraud (Counts 2-7), and securities fraud involving a motor vehicle title (Count 18) in an indictment filed on November 6, 2019. (DCD at 2). McCray pled guilty to Count 1 of indictment pursuant to a written plea agreement on September 1, 2020. (PSR at 4, ¶¶ 2-3). The District Court accepted McCray's guilty plea on September 16, 2020. (PSR at 4, ¶ 2).

**2. Guideline issues to be resolved**

    **2.1 McCray should receive a four-level minimal role reduction under USSG §3B1.2(a)**

1

### 2.1.1 Probation's determination

Probation determined that "McCray acted as a straw purchaser for 85 of the 157 vehicles involved in this conspiracy. McCray was personally involved with over half of the vehicles that were sold with tampered odometer readings, and he was paid per vehicle that he "purchased" for Bradley and Bell; therefore, the defendant was aware of the scope of the criminal activity, and he stood to benefit financially. However, there is no evidence that McCray possessed decision-making authority in the conspiracy. Based on these factors, neither an aggravating or mitigating role adjustment is appropriate for McCray. USSG §§3B1.1, 3B1.2." (PSR at ¶ 48). McCray objected to this finding and maintains that he should receive a mitigating role adjustment under USSG §3B1.2.

### 2.1.2 Mitigating role adjustments under USSG §3B1.2

The guidelines permit a mitigating role reduction if the defendant was "a minimal participant" and a two level reduction if he was a "minor participant." *United States v. Denton*, 434 F.3d 1104, 1114 (8th Cir. 2006) (citing USSG § 3B1.2(a)-(b)). USSG §3B1.2 provides that "Based on the defendant's role in the offense, decrease the offense level as follows: (a) If the defendant was a minimal participant in any criminal activity, decrease by 4 levels. (b) If the defendant was a minor participant in any criminal activity, decrease by 2 levels. In cases falling between (a) and (b), decrease by 3 levels." McCray bears the burden of proving that he is entitled to a mitigating role adjustment. *Id.* (citing *United States v. Hagan,* 412 F.3d 887, 893 (8th Cir. 2005)).

The commentary to USSG §3B1.2 is instructive here. Application Note (3)(A) to USSG §3B1.2 states that "A defendant who is accountable under § 1B1.3 (Relevant

Conduct) only for the conduct in which the defendant personally was involved and who performs a limited function in the criminal activity may receive an adjustment under this guideline." Furthermore, this Application Note provides that "a defendant who is accountable under § 1B1.3 for a loss amount under § 2B1.1 (Theft, Property Destruction, and Fraud) that greatly exceeds the defendant's personal gain from a fraud offense or who had limited knowledge of the scope of the scheme may receive an adjustment under this guideline. For example, a defendant in a health care fraud scheme, whose participation in the scheme was limited to serving as a nominee owner and who received little personal gain relative to the loss amount, may receive an adjustment under this guideline."

A defendant is eligible for a minimal participant reduction if he is "plainly among the least culpable of those involved in the conduct of a group" and lacks knowledge of "the scope and structure of the enterprise and of the activities of others." *United States v. Denton*, 434 F.3d 1104, 1114-15 (8th Cir. 2006) (citing USSG § 3B1.2, cmt. 4). A minor participant reduction may be available if he "is less culpable than most other participants, but [his] role could not be described as minimal." *Id*. at 1115 (citing USSG § 3B1.2, cmt. 5). A less culpable defendant is not entitled to reduction if he was "deeply involved" in the offense, however. *Id*. (citing *United States v. Johnson,* 408 F.3d 535, 538 (8th Cir. 2005)). "To determine whether a reduction is appropriate, the court compares the acts of each participant in relation to the relevant conduct for which the participant is held accountable and measures each participant's individual acts and relative culpability against the elements of the offense." *Denton*, 434 F.3d at 1115 (citing *Johnson,* 408 F.3d at 538–39).

### 2.1.3 McCray is entitled to a mitigating role adjustments under USSG §3B1.2

McCray performed a limited function in the criminal activity. According to the PSR, "Kendric Vandrell McCray (McCray) and others were 'straw buyers' or 'straw purchasers' of used motor vehicles purchased by and through 4th Avenue. Keithen Deone McCorkle (Keithen) and Nicholas T. McFarlin (McFarlin), and others, recruited, persuaded and induced persons to be straw buyers to place vehicle titles in their names when purchasing and selling used motor vehicles through 4th Avenue and elsewhere. Derek Martinez (Martinez), also known as Derik Cole, posing as McCray, sold motor vehicles purchased by 4th Avenue." (PSR at ¶ 12). There were "14 straw buyers who purchased, on paper, 335 vehicles with 157 of the 335 vehicles documented as having odometers rolled back to show lower mileage than the actual mileage. Of the 335 vehicles, McCray purchased 180 of the vehicles and 85 of those were resold with tampered/altered odometer (mileage) readings." (PSR at ¶ 17). Accordingly, McCray's role in the conspiracy was limited relative to the other members of the conspiracy where he only acted as a straw buyer and only did so for some of the vehicles that were sold.

Furthermore, the "loss amount under § 2B1.1 (Theft, Property Destruction, and Fraud) [] greatly exceed[ed] the defendant's personal gain from a fraud offense." The total amount of loss attributed to McCray was $152,830. (PSR at ¶ 47). However, McCray "benefited only $2,550 (85 vehicles X $30) from his participation in the conspiracy." (PSR at 32, "Part E"). Furthermore, McCray "had limited knowledge of the scope of the scheme." McCray's role was limited to being one of fourteen straw buyers. McCray was

"not involved in altering the odometers," (PSR at 32, "Part E"), and was not involved in the downstream sales of any of the vehicles on the internet. He has repeatedly stated that he did not know about the online sales of the vehicles that he bought on paper. Therefore, a role adjustment under USSG §3B1.2 is warranted.

McCray should receive a four-point minimal role adjustment. Minimal participants under USSG §3B1.2 are "defendants who are plainly among the least culpable of those involved in the conduct of a group. Under this provision, the defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as minimal participant." USSG §3B1.2, App. Note 4. McCray should be considered a minimal participant in the conspiracy. He was a drug user who was paid a nominal amount of money by his employer to purchase these vehicles on paper. His employer and friends exploited his drug addiction to profit from him. A four-level reduction under USSG §3B1.2 is therefore appropriate.

### 2.2 Requested guideline calculation

McCray maintains that a four-level role adjustment is appropriate here. This would reduce McCray's total offense level from 16 to 12. Where McCray's total offense level is 12, and his criminal history category is VI, his guideline imprisonment range should be 27-33 months.

### 3. 18 U.S.C. § 3553(a) factors warranting a sentence below or near the lower end of the guideline range

Evidence of a defendant's history and characteristics "is clearly relevant to the selection of an appropriate sentence." *Pepper v. United States*, 131 S. Ct. 1229, 1242 (2011)

(citing § 3553(a)(1)). *Pepper* emphasized that a sentencing court must "consider every convicted person as an individual," *id.* at 1240 (quoting *Koon v. United States*, 518 U.S. 81, 113 (1996)), and must fashion a punishment that "fit[s] the offender and not merely the crime." *Id.* (citations omitted).

McCray is 52 years old. (PSR at 3). McCray's parents were not married when he was born, and his father passed away after a car accident during the first year of McCray's life. (PSR at 24, ¶ 97; PSR at 25, ¶ 101). This led to a "'pretty bad'" childhood and mental health issues as McCray grew up. (PSR at 24, ¶ 97). After his father's death, McCray's stepfather physically and emotionally abused McCray and his brother, using extension cords, branches, and belts. (PSR at 24, ¶ 97).

Despite McCray's troubled childhood, he graduated with a diploma from Moline High School in 1988. (PSR at 28, ¶ 124). He later took classes at Blackhawk College from 1991 to 1992, but he did not complete a degree. (PSR at 28, ¶ 125). McCray worked various manual labor jobs prior to 2007. (PSR at 29, ¶ 134). McCray worked as a laborer at Xpac from November of 2007 to February of 2009. (PSR at 29, ¶ 133). McCray was unemployed from 2010 to 2012, (PSR at 29, ¶ 132), and worked as a laborer at 4th Avenue Auto Sales from 2012 to 2013. (PSR at 29, ¶ 131). McCray was also briefing employed as a laborer for a landscaping company in 2015 and 2016, (PSR at 29, ¶ 130), and he was employed as a laborer through People Ready from May 2016 to February 2018. (PSR at 29, ¶ 129). From June to October of 2019, McCray was employed as a laborer for a lawn service company. (PSR at 29, ¶ 128). According to the PSR, "If incarcerated, the defendant plans to participate in vocational training and is open to attending college courses. The defendant

identified steady employment, sobriety, family support, and a stable residence as the keys to remaining successful while serving a future term of supervision." (PSR at 25, ¶ 99).

McCray's inconsistent employment is largely due to his history of drug use. McCray began drinking alcohol when he was 16. He regularly drank alcohol from age 22 to 50. (PSR at 28, ¶ 117). McCray began smoking marijuana at age 20, and continued using the substance until age 23. (PSR at 28, ¶ 118). McCray began using cocaine at age 24, and the habit escalated from using one per month from ages 24 to 29 to twice per week during the end of his usage. (PSR at 28, ¶ 116). However, crack cocaine has been his greatest problem:

> At age 38, the defendant first used crack cocaine. From age 38 until the defendant's arrest for the instant offense, he used crack cocaine approximately five times per week. He last used crack cocaine a few days prior to his arrest for the instant offense. The defendant identified crack cocaine as his substance of choice and as the substance that has caused the most problems in his life. The defendant reported his use of crack cocaine has caused him to miss work and has caused problems in his relationships with his children. (PSR at 27, ¶ 115).

McCray underwent a substance abuse evaluation in November of 2019, where McCray was diagnosed with "cocaine use disorder, severe, and alcohol use disorder, severe." (PSR at 28, ¶ 120). McCray was recommended for "level one extended outpatient treatment." (PSR at 28, ¶ 120). McCray believes that he would benefit from treatment in the future. (PSR at 28, ¶ 121).

Despite McCray's struggles with substances, he has maintained the support of his family. McCray's mother, Rosemary, is 72 years old and lives in a nursing home in Rock Island. (PSR at 25, ¶ 100). McCray maintains a good relationship with his mother, talking to her weekly. (PSR at 25, ¶ 100). Rosemary used to be an alcoholic, but she is now sober.

(PSR at 25, ¶ 100). She is supportive of McCray. (PSR at 25, ¶ 100). McCray has a half-brother named Cedric who is mentally disabled and has struggled with substance abuse. (PSR at 25, ¶ 102). McCray also has a half-sister, who is a nurse in Rock Island and remains supportive of McCray. (PSR at 25, ¶ 103).

McCray also has several children. McCray's oldest daughter, Ashley, lives in Davenport and works as a beautician. (PSR at 26, ¶ 106). McCray's second-oldest daughter, Kenajah, attends Murray State University in Kentucky. (PSR at 26, ¶ 104). McCray's old son, Rico, is employed by a bakery in Burlington. (PSR at 26, ¶ 105). McCray's youngest children—Kendric Jr. and Cherish—are still teenagers and living with their mother. (PSR at 26, ¶ 104). Aside from Rico's prior convictions for operating while intoxicated and resisting arrest, McCray's children have led stable, successful, law-abiding lives. McCray has acknowledged that "his substance abuse has severely interfered with his relationship with his children." (PSR at 26, ¶ 107). McCray's relationship with them is "'okay'" not, but "there were long periods of time during which he had custody of them." (PSR at 26, ¶ 107).

McCray is a drug addict, which was why he was chosen by his co-conspirators to be the "perfect 'fall guy,'" as the Government has described him. (DCD at 330, p. 1). Because he was addicted to drugs and did not have consistent employment, he was always in need of quick, easy money. Small payments would suffice because it would enable him to buy drugs as he needed them. McCray's co-conspirators took advantage of his desperate need for drugs to entice him to carry out aspects of the fraud that they did not wish to perform themselves, likely because of the high probability of getting caught. McCray knew that what

he was doing was illegal, but he did not know that what he was doing was part of a much more sophisticated scheme that could carry such harsh penalties. Therefore, McCray's personal characteristics warrant a sentence below the guidelines. § 3553(a)(1).

Probation has calculated McCray's guideline range to be 46 to 57 months. (PSR at 31, ¶ 143). A sentence at even the lower end of this guideline range is proportionately harsh. Such a sentence is greater than necessary to comply with the purposes set forth in § 3553(a)(2). A sentence at the middle or upper end of the guidelines would also be greater than necessary to provide respect for the law and just punishment under § 3553(a)(2)(A). A sentence of 57 months would be nearly five years in prison. Given the fact that McCray's role was limited and motivated by a drug addiction, a sentence of nearly five years in prison is disproportionately harsh.

McCray's troubled up-bringing, early and on-going drug use, and other particularized facts described above render a sentence below or near the lower end of the guideline range sentence "sufficient but not greater than necessary" to meet the § 3553(a) punishment purposes. In contrast, a sentence in the middle or on the higher end of the guideline range would be far greater than necessary to serve those purposes considering the 3553(a) factors described above. Therefore, McCray requests that this Honorable Court impose a sentence below or near the lower end of the guideline range.

**D. Other considerations and requests.**

McCray has a diagnosed drug problem for which he desires treatment. Therefore, he respectfully requests an RDAP recommendation. Furthermore, McCray respectfully requests a placement recommendation at a prison closest to the Quad Cities.


WHEREFORE, KENDRIC MCCRAY, through undersigned counsel, respectfully requests, pursuant to 18 U.S.C. § 3553(a) and *United States v. Booker*, 543 U.S. 220 (2005), and its progeny, that this Honorable Court impose a sentence below or near the lower end of the guideline range, followed by a term of supervised release.

DATED: May 24, 2021.

              /s/ Nate Nieman
              NATE NIEMAN
              ATTORNEY FOR DEFENDANT

Nate Nieman
Attorney at Law
329 18th St.
Rock Island, IL 61201
Telephone: (309) 623-4831
Fax: (309) 517-5843
Email: nate@niemanlaw.com
AT0012858

## CERTIFICATE OF SERVICE

I hereby certify that on May 24, 2021, I caused the Defendant's SENTENCING MEMORANDUM to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the Government in this case.

              /s/ Nate Nieman
              NATE NIEMAN
              ATTORNEY FOR DEFENDANT